UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

KEVIN MCNAMARA,

       Plaintiff,

   -v-

                              No.  06 Civ 5585 (LTS) (FM)

THE CITY OF NEW YORK, DETECTIVE
MICHAEL GRADY, MICHAEL ZADWDAS,
MATTHEW WHELAN, FRANK TARANTOLA,
and MICHAEL A. GIRDUSKY,

       Defendants.

------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

          Plaintiff Kevin McNamara ("Plaintiff" or "McNamara") brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 asserting claims for false arrest and malicious prosecution against defendants Sergeant Michael Zadwas, Captain Matthew Whelan, Lieutenant Frank Tarantola, Police Officer Michael Girdusky (collectively the "on-duty officers"), and the City of New York ("City"), and claims for false arrest, excessive force, and malicious prosecution against defendant Detective Michael Grady ("Det. Grady"), stemming from his April 28, 2005 arrest.  Plaintiff also asserts various state law claims.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

          The City and the individual on-duty officer defendants (collectively, the "City Defendants") now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Det. Grady, who is represented separately, moves for partial summary judgment pursuant to Rule 56.

<u>Background</u>

The following material facts are undisputed, except where indicated. On April 28, 2005, Plaintiff was walking in the vicinity of 43rd Street and Laurel Hill Boulevard in Queens, NY. (Pl.'s Dep. 39:13–23, Mar. 12, 2008.) As Plaintiff walked down the sidewalk, Det. Grady was walking toward him with a large Rottweiler dog. (Pl.'s 56.1 Stmt. in Opp'n to Def. Grady's 56.1 Stmt. ¶ 5 ("Pl.'s Grady 56.1 Stmt.").) As they walked past each other, Det. Grady asked Plaintiff "what's your problem?" (Pl.'s Grady 56.1 Stmt. ¶ 31; Def. Grady's 56.1 Stmt. ¶ 4.) Plaintiff responded to Det. Grady by telling him that all he wanted to do was walk down the street without being menaced by Det. Grady's dog. (Pl.'s Grady 56.1 Stmt. ¶ 32.) Det. Grady responded by cursing at Plaintiff. (<u>Id.</u> ¶ 33.) At some point, Det. Grady tied his dog's leash to a fence and kicked Plaintiff in the groin. (Pl.'s Dep. 69:3–70:14; Def. Grady's 56.1 Stmt. ¶ 7.) Plaintiff then kicked Det. Grady in the knee. (Pl.'s Dep. 72:22.) When Plaintiff kicked Det. Grady in the knee, Det. Grady backed away. (<u>Id.</u> 73:3–5, 73:19–21.)

At this point, Det. Grady pulled a revolver out and pointed it at Plaintiff. (Pl.'s Grady 56.1 Stmt. ¶ 36; Def. Grady's 56.1 Stmt. ¶ 10.) Det. Grady also held up his badge for Plaintiff to see, and identified himself as a police officer. (Pl.'s Dep. 78:3–15, 79:13–19; Def. Grady's 56.1 Stmt. ¶ 11.) Prior to Det. Grady holding up his badge and identifying himself as a police officer, Plaintiff did not know or believe that Det. Grady was a police officer. (Pl.'s Dep. 80:11–17, 107:21–13.) Plaintiff retrieved his cell phone from his bag and called 911, reporting that someone had pulled a gun on him and requesting immediate police assistance; he gave a description of Det. Grady. (Pl.'s Dep. 82:1–5, 85:6–21.) As Plaintiff called 911, Det. Grady left the scene. (Pl.'s Dep. 84:4–14.) At no point during the encounter did Det. Grady attempt to arrest Plaintiff. (Pl.'s Dep. 108:14–18.)

Uniformed officers, including P.O. Girdusky, responded to Plaintiff's 911 call and began driving around the neighborhood, with Plaintiff in the patrol car, in search of Det. Grady. (Pl.'s Grady 56.1 Stmt. ¶ 41.)  While searching for Det. Grady, P.O. Girdusky heard over his police radio that other officers had apprehended Det. Grady.  (Id. ¶ 42.)  The on-duty officers who had picked up Plaintiff drove to 47th Street and Laurel Hill Boulevard, where Det. Grady was talking to the other on-duty officers, and Plaintiff identified Det. Grady as the person who had pulled a gun on him.  (Pl.'s Dep. 90:13–92:3.)

After Det. Grady and Plaintiff had given their respective versions of the altercation, both were taken into custody by the on-duty officers and transported to the 108th police precinct. (Pl.'s Dep. 93:5–18; Def. Grady's 56.1 Stmt. ¶ 19.)  At the precinct, Plaintiff was placed in a room, and, after a while, P.O. Girdusky entered the room and placed Plaintiff under arrest.  (Pl.'s Dep. 96:7–21.)  P.O. Girdusky informed Plaintiff that he was being arrested because Det. Grady had reported that Plaintiff had pulled a knife on him.  (Pl.'s Dep. 96:23– 97:4.)  Plaintiff was charged with Menacing in the Second Degree, under N.Y. Penal Law § 120.14, and Harassment in the Second Degree, under N.Y. Penal Law § 240.26.  (Colihan Decl., Ex. 1.)  Officer Girdusky completed and signed a Criminal Court Complaint stating that Plaintiff had pulled a knife on Det. Grady, and that the complaining witness was Det. Grady.  (Fourth Colihan Decl., Ex. 1.)  Plaintiff denied ever having a knife, and no knife was recovered.  (Pl.'s Dep. 97:18-19; Fourth Colihan Decl., Ex. 4, at 2.)

Plaintiff spent approximately 23 hours in custody.  (Pl.'s Grady 56.1 Stmt. ¶ 46.) The District Attorney's office prepared an intake report stating that Det. Grady desired to prosecute Plaintiff, and also that Det. Grady wanted a Temporary Order of Protection ("TPO") against Plaintiff.  (Pl.'s Grady 56.1 Stmt. ¶¶ 47–49; Fourth Colihan Decl., Ex. 4, at 1.)  On May 10, 2005,

Det. Grady signed a Supporting Declaration, swearing that he had read the accusatory instrument

charging Plaintiff with Menacing in the Second Degree and Harassment in the Second Degree, and

that the facts underlying those criminal charges were true.  (Pl.'s 56.1 Stmt. ¶¶ 23, 51; Fourth

Colihan Decl., Ex. 2.)

   The criminal charges against Plaintiff were dismissed on February 27, 2006.

(Fourth Colihan Decl., Ex. 5.)  The parties have not proffered any evidence as to the reason for the

dismissal.

   For the following reasons, the Court grants the City Defendants' motion for

summary judgment, and grants in part and denies in part Det. Grady's motion for partial summary

judgment.


DISCUSSION

Legal Standard

   Summary judgment is to be granted when the pleadings, depositions, answers to

interrogatories, admissions on file, and affidavits "show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  In opposing the motion, the nonmoving party may not rest on mere arguments that there are

contested facts, but must "set forth specific facts showing that there is a genuine issue."  Fed. R.

Civ. P. 56(e).  The facts will be viewed in the light most favorable to the party opposing the

motion, and all reasonable inferences shall be drawn on the non-movant's behalf.  Am. Cas. Co. of

Reading, Pa v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994).  Summary judgment is not

appropriate if there are disputes about material facts "such that a reasonable jury could return a

verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991).  However, "[c]onclusory allegations, conjecture and speculation" do not establish a genuine issue of fact.  Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998), and "[f]actual disputes that are irrelevant or unnecessary will not be counted," Anderson, 477 U.S. at 248.


Plaintiff's Claims Against Det. Grady

        Det. Grady moves for partial summary judgment as to Plaintiff's false arrest and excessive force claims against him.  He argues that he made no attempt to confine Plaintiff, that he walked away from Plaintiff, that other officers arrested Plaintiff, and that he thus had no involvement in Plaintiff's arrest.  Det. Grady further argues that his physical altercation with Plaintiff was a purely private dispute, and thus he was not acting under color of state law.

        Action under color of state law is an essential pre-requisite to liability under §§ 1983 and 1988.  Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003).  Although the facts are in dispute as to exactly how the altercation occurred, i.e., who started it, who escalated it, whether Plaintiff had a knife, etc., the parties agree that Det. Grady only displayed his gun and shield and identified himself as a police officer after the altercation had escalated to a physical level.  Det. Grady and Plaintiff also agree that the altercation ended once Det. Grady identified himself as a police officer: Det. Grady left the location and Plaintiff called 911.

        The Court finds that, on this record, no rational fact finder could determine that Det. Grady was acting under color of state law prior to the time he displayed his badge and gun and identified himself as a police officer.  Thus, there is no predicate for liability under section 1983 or section 1988 for the physical altercation that occurred before Det. Grady identified himself as a

police officer, and Det. Grady is entitled to judgment in his favor as a matter of law on Plaintiff's excessive force claim.

Claims for false arrest, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizure, are "substantially the same" as claims for false arrest under New York state law.  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Under New York law, to prevail on a false arrest claim a plaintiff must prove that 1) the defendant intended to confine the plaintiff, 2) the plaintiff was conscious of the confinement, 3) the plaintiff did not consent to the confinement, and 4) the confinement was not otherwise privileged.  Martinez v. City of Schenectady, 761 N.E.2d 560, 564 (N.Y. 2001).

Det. Grady argues that, because he did not try to confine Plaintiff, did not arrest Plaintiff, was not Plaintiff's arresting officer, and in fact walked away from Plaintiff after identifying himself as a police officer, he cannot be held liable for false arrest based on the sidewalk encounter.  Plaintiff does not dispute these propositions and proffers no evidence that Det. Grady confined him at any time.  Rather, he bases his false arrest claim against Det. Grady on Grady's allegedly false report to the arresting officers and the arrest that followed that report.

The record indicates that Det. Grady made an oral report to the on-duty, arresting, officers that Plaintiff alleges was false, the on-duty officers took both Plaintiff and Det. Grady to the precinct and, subsequent to Plaintiff's arrest, Det. Grady signed a supporting deposition swearing that the facts within the Criminal Court complaint were true.  The record also indicates that Plaintiff was arrested based on Det. Grady's allegation that, during his encounter with Plaintiff on the sidewalk, Plaintiff had pulled a knife on him.  The record further indicates that Plaintiff denied ever having a knife on the date in question and no knife was ever recovered by the police.

A civilian complainant who, in good faith, seeks "police assistance or furnish[es]

information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed," generally will not be held liable for false arrest.  Weintraub v. Bd. of Educ. of City of N.Y., 423 F. Supp. 2d 38, 55 (E.D.N.Y. 2006); Du Chateau v. Merto-North Commuter R.R. Co., 688 N.Y.S.2d 12, 15 (2d Dep't 1999).  However, "even where there is no claim that a defendant actually restrained or confined a plaintiff, a claim for false arrest may lie where a plaintiff can 'show that . . . [a] defendant [who 'lacked reasonable cause for . . . belief in plaintiff's culpability'] instigated his arrest, thereby making the police . . . agents in accomplishing [his] intent to confine the plaintiff.'"  Weintraub, 423 F. Supp. 2d at 55 (quoting Carrington v. City of New York, 607 N.Y.S.2d 721, 722 (2d Dep't 1994) and DeFilippo v. County of Nassau, 183 A.D.2d 525, 527 (2d Dep't 1992)).

Viewing the record in the light most favorable to Plaintiff, a reasonable fact finder could infer that Det. Grady knowingly made a false report to the on-duty officers that Plaintiff pulled a knife on him in order to have the on-duty officers carry out his intent to have Plaintiff falsely arrested.  Indeed, the jury could believe Plaintiff's arguments that Det. Grady's objective in filing the allegedly false report to the on-duty officers was to cover up his altercation with Plaintiff on the sidewalk.  Because there are genuine issues of material fact as to the falsity of the report and Det. Grady's motivation in making it, Det. Grady's motion is denied as to Plaintiff's false arrest claim, insofar as it is premised on Det. Grady's statement in connection with the arrest.

Because, however, Plaintiff proffered no evidence that Det. Grady actually confined him at any time during their altercation on the sidewalk, the Court grants Det. Grady's motion for summary judgment as to any federal or state false arrest claim based on actual confinement by Det. Grady prior to Det. Grady's complaint to the on-duty officers.

Finally, to the extent that Plaintiff's complaint asserts a federal or state malicious

prosecution claim against Det. Grady, the Court grants summary judgment in favor of Det. Grady because Plaintiff has proffered no evidence of favorable termination of the criminal proceedings against him.  (See discussion below of malicious prosecution claim against City Defendants.)

Plaintiff's Claims Against the On-Duty Officers and the City of New York

The on-duty officers, who do not dispute that they were acting under color of state law in effecting Plaintiff's arrest (and participating in the preparation of charges against him), together with the City (collectively, the "City Defendants") move for summary judgment on all claims against them, construing Plaintiff's complaint to raise claims under 42 U.S.C. § 1983, and related state law claims, of false arrest and malicious prosecution.  Plaintiff, in his opposition brief, argues that his complaint asserts federal and state law claims of false arrest, malicious prosecution, and negligent hiring and retention.  Claims of false arrest and malicious prosecution brought under 42 U.S.C. § 1983 mirror state law claims for false arrest and malicious prosecution.

The City Defendants argue that they are entitled to summary judgment dismissing Plaintiff's false arrest claims because there was probable cause for the arrest and because, in any event, the individual officers are entitled to qualified immunity because they had arguable probable cause to arrest Plaintiff.  As to Plaintiff's malicious prosecution claim, the City Defendants argue that Plaintiff fails to state a cause of action because there is no evidence of favorable termination of the criminal charges against Plaintiff and that Plaintiff's malicious prosecution claim is not viable in any event because there was probable cause to arrest Plaintiff, and further that Plaintiff's malicious prosecution claim fails because there is no evidence of malice on the part of the arresting officers. The City Defendants also assert that they are entitled to summary judgment on Plaintiff's state law claims because Plaintiff's parallel federal claims fail, and further argue that Plaintiff's state law

claims against the City fail because he has not filed a notice of claim as required under New York law.

Plaintiff's False Arrest Claim Against the On-Duty Officers

The presence of probable cause is a complete defense to an action for false arrest, whether under § 1983 or New York law. Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999); Weyant, 101 F.3d at 852; Martinez, 761 N.E.2d at 564. Police officers have probable cause to arrest when they have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jocks, 316 F.3d at 135; Weyant, 101 F.3d at 852. Probable cause requires only the probability, not an actual showing, of criminal activity. Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 352 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993). Moreover, probable cause may exist even where the officers have mistaken information, so long as it was reasonable for them to rely on that information. Coyle v. Coyle, 153 Fed. Appx. 10, 12 (2d Cir. 2005). Once police officers have a reasonable basis to believe there is probable cause to arrest, they are not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest. Jocks, 316 F.3d at 135–36.

Here, the undisputed facts and record demonstrate that the on-duty, arresting officers had probable cause to arrest Plaintiff. The on-duty officers were confronted with two different versions of the altercation and, while they could have believed Plaintiff's version, they did not and were not required to. Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). Det. Grady's version was plausible, "and his credibility was buttressed by the fact that he identified himself as a law enforcement officer." Id. (off-duty police officer reported to on-duty, arresting

officers that he had been assaulted by the plaintiff).  "When making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers."  <u>Panetta v. Crowley</u>, 460 F.3d 388, 395 (2d Cir. 2006) (it was reasonable for arresting officer to rely on observations of person claiming to be a "peace officer" under New York law).  Probable cause to arrest does not depend on the accuracy of the fellow officer's observations, but on whether the arresting officers were reasonable in relying on those observations.  <u>Id.</u>  Likewise, it does not matter that an investigation might have cast doubt upon the basis for the arrest.  <u>Id.</u>

        The on-duty, arresting officers in the present case responded to Plaintiff's 911 call and drove Plaintiff around the area in search of Det. Grady.  Additionally, the on-duty officers took both Det. Grady and Plaintiff to the police precinct where they later arrested Plaintiff.  P.O. Girdusky was not required to investigate Plaintiff's protestations of innocence at the precinct once Plaintiff had been informed that he was being arrested; an officer's failure to investigate such protestations "generally does not vitiate probable cause."  <u>Id.</u>  As a matter of law, Det. Grady's version of the altercation was sufficient to supply probable cause for the arrest.

        Because there was probable cause for Plaintiff's arrest, the on-duty officer defendants are entitled to summary judgment on Plaintiff's false arrest claim against them.  Finally, because false arrest brought under § 1983 mirrors state law false arrest, Plaintiff's state law false arrest claim against the on-duty officers also fails as a matter of law.


<u>Plaintiff's Malicious Prosecution Claim Against the On-Duty Officers</u>

        Claims of malicious prosecution, brought under § 1983, are "substantially the same" as claims for malicious prosecution under New York law.  <u>Jocks</u>, 316 F.3d at 134.  Under New York law, a malicious prosecution claim requires a plaintiff to prove "1) the initiation or

continuation of a criminal proceeding against [the] plaintiff; 2) termination of the proceeding in [the] plaintiff's favor; 3) lack of probable cause for commencing the proceeding; and 4) actual malice as a motivation for [the] defendant[s'] actions."  Id. at 136 (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)); Martinez, 761 N.E.2d at 564.  Plaintiff "bears the burden of establishing that the underlying criminal action terminated favorably to him."  McFawn v. Kresler, 666 N.E.2d 1359, 1359 (N.Y. 1996).  Under New York law, even  dismissal of a criminal prosecution "at the People's request because they did not believe they could meet their burden at trial" does not constitute favorable final termination.  Breytman v. Olinville Realty, LLC, 850 N.Y.S.2d 9, 11 (1st Dep't 2007); Slatkin v. Lancer Litho Packaging Corp., 822 N.Y.S.2d 507, 509 (1st Dep't 2006).  Plaintiff's malicious prosecution claim against the on-duty officers fails because, as discussed above, the on-duty officers had probable cause to arrest plaintiff, and because there is no indication in the record that the criminal prosecution against Plaintiff was terminated in his favor.

The arresting officers' probable cause to arrest Plaintiff, also constituted probable cause to commence the criminal proceeding against Plaintiff that arose from those allegations. Maron v. County of Albany, 166 Fed. Appx. 540, 541 (2d Cir. 2006).  Thus, Plaintiff's malicious prosecution claim against the on-duty officer defendants fails on that ground.

Here, where there is no evidence in the record as to the reason for the dismissal of the charges, Plaintiff has not carried his burden of presenting facts sufficient to demonstrate that the criminal prosecution against him was terminated in his favor.  Abramson v. Pataki, 278 F.3d 93, 101 (2002) (summary judgment is properly granted when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial") (quoting Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986)).  Because a claim of malicious prosecution brought under § 1983 mirrors state law

malicious prosecution, Plaintiff's state law malicious prosecution claim against the on-duty officers

also fails as a matter of law.  <u>McFawn</u>, 666 N.E.2d at 1359.

In light of the Court's determination that the City Defendants are entitled to

summary judgment on the merits of Plaintiff's false arrest and malicious prosecution claims, it is

unnecessary for the Court to address the arresting officers' qualified immunity argument.

<u>Plaintiff's Monell Claim Against the City of New York</u>

In <u>Monell v. Department of Social Services</u>, the Supreme Court held that "a local

government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.

Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or

by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that

the government as an entity is responsible under § 1983."  <u>Id.</u>, 436 U.S. 658, 694 (1978).  "<u>Monell</u>

does not provide a separate cause of action for the failure by the government to train its employees;

it <u>extends</u> liability to a municipal organization where that organization's failure to train, or the

policies or customs that is has sanctioned, led to an independent constitutional violation."  <u>Segal v.</u>

<u>City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006).

Plaintiff asserts a <u>Monell</u> claim based on the City's alleged policy or practice of

failing to train, supervise, or discipline its police officers as contributing to his injuries.  However,

Plaintiff has not proffered evidence sufficient to suggest the existence of any relevant municipal

policy.   <u>DeCarlo v. Fry</u>, 141 F.3d 56, 71 (2d Cir. 1998) ("[A] single incident . . . especially if it

involved only actors below the policy-making level, does not suffice to show municipal liability.")

Moreover, Plaintiff has not linked any facts showing the existence of a municipal policy to his

alleged constitutional injury.  Similarly, Plaintiff has not proffered evidence that the City "had

notice of but repeatedly failed to make any meaningful investigation into charges that its agents

were violating citizens' constitutional rights."  <u>DeCarlo</u>, 141 F.3d at 71.  Nor does the record

contain any evidence that Plaintiff's alleged injuries were foreseeable in light of the City's practices.

<u>Reynolds v. Giuliani</u>, 506 F.3d 183, 192 (2d Cir. 2007) ("A city's failure to train its subordinates

satisfies the policy or custom requirement only where the need to act is so obvious, and the

inadequacy of current practices so likely to result in a deprivation of federal rights, that the

municipality or official *can* be found deliberately indifferent to the need.").  For these reasons, the

Court grants summary judgment in favor of the City on all of Plaintiff's federal claims against it.


<u>Plaintiff's State Law Negligent Hiring and Retention Claim Against the City</u>

                    In his opposition brief, Plaintiff asserts that he has stated a claim of negligent hiring

and retention against the City. Assuming for the sake of argument that such a claim has been

properly asserted here, the City is entitled to judgment dismissing the claim as a matter of law

because Plaintiff does not raise any claim of negligent hiring and retention in his complaint, and

proffers no evidence to indicate that the City had, at the time of Det. Grady's hiring or at any other

time prior to the incident in question, reason to believe that Det. Grady would engage in conduct

such as is alleged here.  Therefore, the Court grants the City's motion for summary judgment as to

Plaintiff's claim of negligent hiring and retention alleged against it.  <u>Abramson</u>, 278 F.3d at 101

(summary judgment is properly granted when the non-moving party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial") (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).[1]

## CONCLUSION

For the foregoing reasons, City Defendants' summary judgment motions are granted as to all of Plaintiff's federal and state law claims against them. Det. Grady's partial summary judgment motion is granted with respect to all of the claims asserted against him other than Plaintiff's federal and state false arrest claims insofar as they are based on Det. Grady's allegedly false report to the on-duty officers. This decision resolves Docket Entry Nos. 37 and 52. The final pre-trial conference in this case, currently scheduled for Friday, April 3, 2009, at 11:00 am is adjourned to Tuesday, June 9, 2009, at 3:00 pm. The parties remaining in the action are directed to contact Judge Maas's chambers promptly to schedule a settlement conference.

SO ORDERED.

Dated: New York, New York
March 19, 2009

LAURA TAYLOR SWAIN
United States District Judge

---

[1]    The Court notes that the City, in support of its motion for summary judgment, points out that Plaintiff fails to allege in his complaint that he timely filed a notice of claim, which is a condition precedent to state law claims for false arrest or malicious prosecution against the City. Scott v. City of New York, 836 N.Y.S.2d 140 (2d Dep't 2007). Plaintiff proffers no evidence in opposition to show that he has in fact filed a notice of claim.